UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK B.,

                                          Plaintiff,

v.                                                                          3:20-CV-1587 (ML)

COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

APPEARANCES:                                                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON            STEVEN DOLSON, ESQ.
  *Attorneys for Plaintiff*
126 N. Salina St., Suite 3B
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                     AMELIA STEWART, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**MIROSLAV LOVRIC**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

      Plaintiff Mark B. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Social Security Disability Insurance ("SSDI"). (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Currently before the Court are Plaintiff's motion for judgment on the pleadings and Defendant's

motion for judgment on the pleadings. (Dkt. Nos. 7, 10.)  For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

I. **PROCEDURAL HISTORY**

On July 26, 2019, Plaintiff protectively filed an application for SSDI, alleging disability dating from August 24, 2018, due to chronic neck and back pain.  (Administrative Transcript ("T.") 263-264.)  His application was denied initially on September 6, 2019.  (T. 104-115.)  Plaintiff requested reconsideration of this denial, but it was upheld on October 9, 2019.  (T. 144-156.)  Plaintiff then requested a hearing, where he testified on February 14, 2020, before Administrative Law Judge ("ALJ") Robyn L. Hoffman. (T. 38-53.)  With Plaintiff's consent and participation, the ALJ held a supplemental telephonic hearing on June 4, 2020, at which vocational expert ("VE") Lori A. Cowan testified.  (T. 55-80.)  The ALJ issued an unfavorable decision on July 22, 2020.  (T. 12-27.)  This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 21, 2020.  (T. 1-6.)

II. **GENERALLY APPLICABLE LAW**

A. **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B. **Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

        claimant can perform given the claimant's residual functional
        capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

### III.   <u>FACTS</u>

As of the date of the ALJ's decision, Plaintiff was 53 years old. (T. 263.) He is a high school graduate who completed two years of college. (T. 276.) His prior employment includes positions as warehouse coordinator, sodier technician, gridley operator, and plant supervisor at a manufacturing facility. (T. 298-305, 347.) He stopped working due to his chronic back and neck pain. (T. 275-276.)

Plaintiff reported that he first injured his neck and back after falling from a ladder in 2005. (T. 392.) In November 2018, shortly after the date last insured, Plaintiff reported a numbness in the front of his upper right thigh that extended to his feet when he walked for distance. (*Id.*) He reported little success with physical therapy, but experienced temporary pain relief from regular visits to his chiropractor. (T. 51, 392, 425.) At his hearing in February 2020, Plaintiff testified that if he sat or stood for more than thirty minutes at a time, the pain radiated out into his hips and down the back of his legs. (T. 45.) He testified that, on his physician's advice, he tried to keep moving but was generally only able to do some stretching exercises and take a weekly walk for about three city blocks. (T. 46.) He reported reduced range of motion in his neck and estimated that he could lift no more than ten pounds at a time or reach up any higher than shoulder height. (T. 46-48.) He received assistance from his wife and family members with household chores and other strenuous tasks. (T. 46-47.)

The record includes Plaintiff's treatment history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV. THE ALJ'S DECISION

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through September 30, 2018. (T. 17.) After finding that Plaintiff did not engage in substantial gainful activity ("SGA") after the alleged onset date of August 24, 2018 through the date last insured, the ALJ found that Plaintiff's cervical degenerative disc disease and lumbar degenerative disc disease were severe impairments. (T. 17-19.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment. (T. 19.) At step four, the ALJ found that Plaintiff could perform less than the full range of light work. (T. 19-21.) Specifically, the ALJ found that, through the date last insured, Plaintiff could:

> occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit for up to 6 hours, and stand or walk for 6 hours, all in an 8-hour workday with normal breaks; with the following additional limitations. He required a sit/stand option at the worksite with the ability to change positions frequently, further defining "frequently" as "every hour for one minute with the ability to then return to the same or different position." He could occasionally climb stairs and ramps, but never climb ladders or scaffolds. He could occasionally stoop, kneel, crouch, and crawl. He could frequently push and pull. He could frequently reach in all directions, including overhead. He could frequently perform handling (gross manipulation) and fingering (fine manipulation). He could never lift overhead. He had to avoid concentrated exposure to extreme cold and vibrations, such as operating a jackhammer or other equipment where the operator would be significantly vibrated. He had to avoid all hazards of height and machinery.

(T. 19.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p.  (T. 19.)  The ALJ further stated that she considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 404.1520c.  (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain, symptoms, and functional limitations raised during the hearing and in the overall administrative record. (T. 19-21.)

At step four, the ALJ relied on the VE testimony to determine that Plaintiff was capable of performing his past relevant work as a production supervisor, both as actually and generally performed.  (T. 21-22.)  The ALJ also found that there were other jobs that existed in significant numbers in the national economy that Plaintiff also could have performed.  (T. 22-23.) Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date of August 24, 2018 through the date last insured of September 30, 2018.[2]  (T. 23.)

## V.     ISSUES IN CONTENTION

Plaintiff argues that the ALJ committed reversible error by improperly evaluating a medical source opinion from Plaintiff's treating chiropractor.  (Dkt. No. 7 at 5-8.)  Defendant contends that the ALJ's decision is supported by substantial evidence.  (Dkt. No. 10 at 6-8.)  For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted and the Commissioner's decision is affirmed.

---

[2]     Plaintiff had a previous application for benefits with an alleged onset date of October 13, 2015 that was denied by a different ALJ on August 23, 2018.  (T. 81-98.)  That previous application was the subject of a separate judicial proceeding.  *Mark B. v. Comm'r of Soc. Sec.*, No. 3:19-CV-1062 (DEP).  The July 22, 2020 ALJ decision at issue in this case is limited to the narrow period between the August 24, 2018 onset date alleged in Plaintiff's current application for SSDI benefits and his date last insured, and will not impact determinations made in connection with that earlier proceeding.

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, 11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (D'Agostino, J.) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* 17-CV-00580, 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018) (Sannes, J.); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *Kirah D. v. Berryhill*, 18-CV-0110, 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019) (Hummel, M.J.); *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, J.) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016) (Dancks, M.J.); *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010) (Kahn, J.); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp.

2d 430, 440 (N.D.N.Y. 2004); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Sec. of Health & Human Servs.*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, 17-CV-01266, 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (Dancks, M.J.) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he

---

[3]    Plaintiff's application was protectively filed on January 5, 2018. (T. 147-153).  Thus, the new regulations apply in this case.

or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

> **B.  Application: The ALJ's evaluation of the medical opinion evidence was supported by substantial evidence**

On December 19, 2019, Plaintiff's treating chiropractor, Dr. James Russell, offered his opinion on Plaintiff's physical RFC.  (T. 470-472.)  Dr. Russell reported that he had treated Plaintiff's chronic cervical and thoracic spine pain for more than five years at the time of his opinion, and regularly performed spinal manipulation that provided temporary pain relief.  (T. 470.)  In Dr. Russell's opinion, Plaintiff's physical impairments would interfere with his attention and concentration during the workday up to ten percent of the time.  (*Id.*)  He also opined that Plaintiff could walk less than 10 city blocks without rest or severe pain, could only sit or stand for thirty minutes at one time before needing to change positions, and could sit or stand/walk for a total of about four hours each during the workday.  (T. 470-471.)  He further opined that Plaintiff could frequently lift up to twenty pounds, but could never lift fifty pounds.  (T. 471.)

In Dr. Russell's opinion, Plaintiff could frequently climb stairs, but could never climb ladders and was limited to occasional twisting, stooping, bending, crouching, or squatting.  (T. 472.)  He opined that Plaintiff was capable of sustaining full time work, but that his impairments would cause him to be absent about two workdays per month.  (*Id.*)

Plaintiff recognizes that chiropractors fall into the definition of medical sources who are not considered acceptable medical sources.  20 C.F.R. § 1502(d).  Still, under the new regulations, all medical sources, not just "acceptable" medical sources, can provide evidence that will be considered medical opinions.  *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.  Plaintiff contends that the ALJ failed to adequately consider Dr. Russell's opinion, particularly with regard to the limitations on Plaintiff's ability to look down and

otherwise turn his head due to limited range of motion in his neck.[4]  (Dkt. No. 7 at 8.)  This Court disagrees.

The check-box form prepared by Dr. Russell—including his opinion regarding reduced range of motion in the head and neck—did not identify any objective medical evidence in support of the limitations that the chiropractor described.  (T. 472.)  This deficiency was particularly noteworthy to the ALJ due to the remote timing of Dr. Russell's opinion, which was issued more than a year after the date last insured.  (T. 18, 21.)  Taking these factors into account, the ALJ specifically rejected Plaintiff's claimed limitations regarding head movement as inconsistent with the overall medical record.

The supportability and consistency analysis necessarily includes a comparison of the medical opinions with other medical sources.  *See Mark K. v. Comm'r of Soc. Sec.*, 20-CV-833S, 2021 WL 4220621, at *3 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. § 404.1520c(c)(1) and (c)(2)).  Following that approach, the ALJ evaluated recent imaging reports and medical treatment notes from the relevant period that document Plaintiff's history of back pain, but do not support the limitations with regard to the head and neck that were described by Dr. Russell. (T. 20-21.)

Although the ALJ was determining Plaintiff's disability status for the narrow period of time between August 24, 2018, through September 30, 2018, the ALJ considered records from the period "one year or less before that period, or from 6 months or less after that period."  (T. 18.)  The ALJ found that the most recent physician-prepared imaging reports in the record, from

---

[4]     At the June 4, 2020 hearing, the VE testified that a restriction to occasional looking down would eliminate all light and sedentary work positions, including Plaintiff's prior work.  (T. 75-76.)

November and December 2017, showed generally mild disfunction in the lumbar and cervical spine, with evidence of multilevel disc bulging and protrusion, and annular tearing in the lumbar spine.  (T. 20, 382-385.)  The physician notes on these reports describe Plaintiff's spinal impairments as stable when compared to prior imaging results.  (T. 382, 384.)

The medical treatment notes cited by the ALJ show that Plaintiff was treating his pain with conservative methods including over the counter pain medication and regular chiropractor appointments during the relevant period.  (T. 396-397.)  His treating sources recommended weight loss through increased exercise and dietary changes but did not discuss surgical intervention.  (T. 20, 396.)  Plaintiff had found physical therapy unsuccessful and declined pain injections. (T. 392.)  During a November 9, 2018 physical examination, his treating nurse practitioner found tenderness and some spasms in the neck and lower back but did not identify any significant deterioration in Plaintiff's condition or raise concerns about limited range of motion in his neck.  (T. 392-397.)

The ALJ also considered Dr. Russell's own treatment notes, particularly those covering the period from March 2018 through February 2019.  (T. 20, 442-456.)  The ALJ noted some consistencies with the medical treatment notes from the same period, as Dr. Russell regularly observed tightness and tenderness in the cervical spine that was exacerbated by head movement and stress and alleviated by chiropractic massage.  (T. 442-456.)  The ALJ also found inconsistencies with the broader record.  (T. 20.)  Dr. Russell's notes frequently refer to "[s]ubluxations found on assessment and adjusted."  (T. 442-456.)  The ALJ found no support in

13

the medical imaging reports, described above, or in the other medical evidence for any subluxations, dislocations, or other debilitating symptoms.[5]  (T. 20.)

The ALJ also considered Dr. Russell's opinion in light of the opinions of two state agency medical consultants who reviewed Plaintiff's medical records, including his chiropractic treatment records.  (T. 107-113.)  These consultants each opined that Plaintiff could occasionally lift up to twenty pounds, frequently lift up to 10 pounds, stand and/or walk for a total of six hours in a normal eight-hour workday, and sit for a total of up to six hours during the workday.  (T. 110-113, 122-123.)  They further opined that Plaintiff needed to alternate positions from sitting and standing to ease pain and discomfort.  (*Id*.)  The ALJ found these opinions to be generally persuasive and adopted their finding that Plaintiff would need to change positions about every hour for one minute due to his physical impairments, and then could return to the same or a different position.[6]  (T. 19, 112, 123.)

"[T]here is no requirement that the ALJ pick one RFC [opinion] and use that particular evaluation in its entirety."  *Alexandrea R.R. v. Berryhill*, 15-CV-0756, 2019 WL 2269854, at *6 (N.D.N.Y. May 28, 2019) (Hurd, J.).  Rather, "it is the ALJ's responsibility to choose between

---

[5]  The traditional medical definition of subluxation is a partial dislocation, such as of one of the bones in a joint.  *See Furey v. Saul*, 17-CV-0943, 2021 WL 5412021, at *4 n. 14 (S.D.N.Y. Apr. 13, 2021) (citing the Merriam-Webster Dictionary definition); *Abualteen v. Saul*, 19-CV-2637, 2020 WL 5659619, at *3 n.13 (S.D.N.Y. Sept. 23, 2020) (citing Stedman's Medical Dictionary definition).  The court notes, however, that the Association of Chiropractic Colleges utilizes a broader definition of subluxation, namely, "a complex of functional and/or structural and/or pathological articular changes that compromise neural integrity and may influence organ system function and general health."  https://www.chirocolleges.org/chiropractic-paradigm-scope-practice

[6]  At the June 4, 2020 hearing, the VE testified that position changes of this frequency and duration would force an individual off-task for less than two percent of the workday and would not impact the ability to maintain employment.  (T. 73.)

properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment." *Alexandrea R.R.*, 2019 WL 2269854 at *6 (quoting *Robles v. Colvin*, 14-CV-1250, 2016 WL 814926, at *4 (N.D.N.Y. Feb. 29, 2016) (Hurd, J.)). The ALJ did so in this case, and adequately explained the supportability and consistency analysis that she utilized. Thus, based on the record as a whole, the Court concludes that the ALJ's evaluation of the medical opinion evidence was supported by substantial evidence, including her rejection of Dr. Russell's opinion that Plaintiff had greater limitations in the use of his head and neck.

### VII. ABILITY TO PERFORM PRIOR WORK AND OTHER LIGHT WORK

To answer the step four inquiry, an ALJ may engage a vocational expert to opine on the jobs that a hypothetical person of the claimant's age, education, and RFC could perform in the national economy. 20 C.F.R. § 404.1560(b)(2) ("a vocational expert . . . may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work"); *accord Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986) ("If nonexertional limitations significantly diminish [claimant]'s ability to perform the full range of 'light work,' then the ALJ should require the Secretary to present either the testimony of a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations."). Here, the ALJ properly inquired of a vocational expert given that Plaintiff's RFC contained multiple non-exertional limitations that limited the potential range of light or sedentary occupations. The VE testified that someone of claimant's age, education, and RFC could still perform Plaintiff's past work as a production supervisor and perform other representative occupations. (T. 21-22, 64-68, 74-75.) Because the RFC determination was supported by substantial evidence, the ALJ's hypothetical was proper.

*See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion'") (citation omitted).  Thus, the ALJ properly concluded that Plaintiff could return to his past work or similar other work during the relevant period, and therefore, he was not disabled.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 14, 2022
       Binghamton, New York

*/s/ Miroslav Lovric*
Miroslav Lovric
U.S. Magistrate Judge